UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROXANNE CLEARY, *et al.*,

                                    Plaintiffs,

v.

KALEIDA HEALTH, *et al.*,

                                    Defendants.
_____

**DECISION AND ORDER**

1:22-cv-00026(LJV)(JJM)

          In 1998, the consolidation of several area hospitals resulted in the creation of an entity known today as Kaleida Health.  Class Action Complaint [1][1] (the "Complaint"), ¶ 55. This putative class action alleges various ERISA violations arising from the July 1999 consolidation of retirement plans for non-union employees of those hospitals (the "Plan"). Id., ¶¶ 1, 58-60.  The Plan was amended in July 1999 to transform the traditional pension benefit provisions into "cash balance" provisions.  Id.

          This action has been referred to me by District Judge Lawrence J. Vilardo for supervision of pretrial proceedings. [9].  Before the court are plaintiffs' and defendants' motions to compel [41, 42]; defendants' motion for a protective order [61]; and defendants' motion to quash non-party subpoenas [73].  Pursuant to the request of the parties at oral argument on August 31, 2023, I held in abeyance the parties' cross-motions to compel while they met and conferred concerning the discovery necessary to perform rough damages calculations.  Text Order [55]; Transcript of oral argument [57] at 51.  I further narrowed the issues by issuing a Decision and Order concerning the temporal scope issue raised by plaintiffs.  *See* Decision and

_____

[1]      Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination.

Order [58].  In addition, I held a series of status conferences while the parties worked to narrow the discovery issues.  *See* Minute Entries [60, 63, 69]; Text Order [66].

At a status conference held on February 2, 2024, the parties agreed to submit letters to me identifying which portions of their motions remained outstanding.  *See* February 2, 2024 Text Order [70]; *see also* [91] and [92]. In the Text Order instructing the parties to submit those letters, I stated that "[t]hose portions of the parties' motions not specifically identified by that date will be deemed resolved" [70].

Having reviewed the parties' papers [33, 37, 40, 41, 42, 50, 51, 52, 53, 54, 61, 64, 65, 73, 79, and 80], their letters dated February 12, 2024 [91, 92], and having heard oral argument [42-1, 42-2, 50-1, 54-1, 57], I address below the unresolved portions of each of the parties' outstanding motions.

## DISCUSSION

"Courts have wide discretion to manage discovery." Smith v. Haag, 2009 WL 3073976, *3 (W.D.N.Y. 2009). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . .  Information within the scope of discovery need not be admissible in evidence to be discoverable".  Rule 26(b)(1).  Whereas "[t]he burden of demonstrating relevance is on the party seeking discovery . . . general and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." US Bank National Association v. PHL Variable Insurance Co., 2012 WL 5395249,  *3 (S.D.N.Y. 2012).

## THE PARTIES' MOTIONS

### A.    Defendants' Motion to Preclude, Compel, and for Attorneys' Fees

Defendants' motion to preclude, compel, and for attorneys' fees [41] requested supplemental disclosures pursuant to Rule 26(a)(1), and supplemental responses to certain of defendants' document requests.  Defendants represented in their letter to the court that they "are satisfied with Plaintiffs' supplemental Rule 26 disclosures" and that plaintiffs "served supplemental responses to the Document Requests at issue".  [92] at 1.

The only outstanding request was for a privilege log from plaintiffs concerning the responsive documents that plaintiffs withheld on the basis of privilege.  Id. at 1-2.  Except for the request to compel plaintiffs to provide a privilege log, defendants "withdraw" this motion, "without prejudice".  Id. at 2.

Local Rules of Civil Procedure ("Local Rule") Rule 26(d) requires parties to provide a privilege log containing specific information whenever it "asserts a claim of privilege in objecting to any means of discovery or disclosure, and withholds otherwise responsive information based on that assertion".  Local Rule 25(d).  Further, plaintiffs agreed to provide a privilege log.  See Transcript of August 31, 2023 proceeding [57] at 46.  Accordingly I grant this portion of defendants' motion and, to the extent they have not already done so, direct plaintiffs to provide a privilege log that complies with the requirements of Local Rule 26(d) on or before December 20, 2024.

### B.    Plaintiffs' Motion to Compel

Plaintiff's motion to compel [42] raised nine issues, eight of which remain unresolved.  [91] at 6.  The first issue was the temporal scope of defendants' responses, which I

decided in my September 25, 2023 Decision and Order [58]. I address issues two through nine below, numbered, for clarity, as they are in plaintiffs' letter [91].

### 2.     Necessary data to calculate the recovery for each individual class member

Plaintiffs' second request is to compel defendants to "produce all data necessary to calculate the recovery for each individual class member and to rectify errors with the data that was produced." [91] at 4. "To obtain pre-certification discovery concerning class issues, the plaintiff must show that such discovery would be relevant to her future motion for class certification." Ford v. Rensselaer Polytechnic Inst., 2022 WL 715779, *4 (N.D.N.Y. 2022).

Plaintiffs' motion for class certification [81] is pending. As plaintiffs did not need this information to make their motion, and no class has yet been certified, this portion of plaintiffs' motion is denied, without prejudice, pending class certification.

### 3.     Contact and Other Information Related to Each Putative Class Member

Plaintiffs' third request is for information that pertains to each putative class member. [91] at 4. As noted above, plaintiffs' motion for class certification [81] is pending. As this information was not needed for plaintiffs to make their motion for class certification, and no class has yet been certified, this portion of plaintiffs' motion is denied, without prejudice, pending class certification.

### 4.     Reasonable Search

Plaintiffs' fourth request is to "compel defendants to conduct a reasonable search or articulate that they have conducted a reasonable search for information responsive to

plaintiffs' interrogatory Nos. 4, 12, 13, 15, and 16".  [91] at 4.  In response to plaintiffs' motion, defendants respond that they "are not obligated to detail their reasonable search efforts, unless they are unable to locate or obtain the information sought".  Declaration of Marissa A. Coheley ("Coheley Declaration") [50-1], ¶47.  Nevertheless, "to assuage Plaintiffs' concerns and assure the Court that Defendants have complied with their discovery obligations", they detailed their document search and collection efforts.  *See* id., ¶¶ 48-67.  The steps defendants took included providing hard copy files to counsel, cooperation between counsel and Kaleida's general counsel's office to collect and review Kaleida Board of Directors materials, reviewing Board minutes and other materials, retrieving boxes from off-site storage archives and reviewing them, searching old filing cabinets and boxes in the employee benefits office, and identifying custodians of ESI and collecting and reviewing their PST (electronic mailbox) files. Id.

Defendants have articulated their efforts to search for responsive information to these interrogatories.  Plaintiffs did not object in their reply to defendants' efforts, or state that those efforts were insufficient or otherwise lacking.  *See* Affirmation of Adam T. Sanderson ("Sanderson Affirmation") [54-1] at 6-7; *see also* Plaintiffs' Reply Memorandum of Law [54] at 10-13.  "[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." Jackson v. Federal Express, 766 F.3d 189, 198 (2d Cir. 2014).

Here, because defendants have provided the information that plaintiffs sought in their motion, their efforts to find the requested information and documents appear to be reasonable, and because plaintiffs do not raise any particular objections to the efforts described in the Coheley Declaration, this portion of plaintiffs' motion is denied as moot.

5.    **Interrogatory No. 10**

Plaintiffs move to compel defendants' response to Interrogatory No. 10, which "seeks any basis for which defendants may contend class certification is not appropriate in this matter". Plaintiffs' Memorandum of Law [42-1] at 18. This interrogatory requests, in its entirety:

> "To the extent that defendants contend that a class action is not appropriate in this matter, identify each legal basis for that contention; all facts or documents which support that contention; each person who has, or is likely to have, discoverable information that the defendants may use to support that contention; and describe in detail the information that person has which the defendants may use to support their contention that a class action or collective action is not appropriate in this matter."

[42-3] at 9.

Defendants argue that this interrogatory "fails to comply with [Rule] 33(a)(1), as it contains multiple, discrete subparts, apparently intended to circumvent the 25-interrogatory limit set forth in Rule 33". Coheley Declaration [50-1], ¶87. They also argue that this interrogatory is "premature" and "inappropriate" under the Rules.

As noted above, plaintiffs have now moved for class certification [81]. I ordered defendants to respond to their motion on or before October 30, 2024, and then held in abeyance briefing on that motion pending resolution of these discovery motions. Text Orders [82, 90]. Defendants stated that they "will address class certification at the proper time in this litigation". Coheley Declaration [50-1], ¶88. That time is yet to be determined. Because the subject of this interrogatory (*i.e.* class certification) is now before the court by way of plaintiffs' motion [81], and defendants will be required to respond, this portion of plaintiffs' motion is denied as moot.

**6.      Second Request for Production**

Plaintiffs move to compel defendants to respond to their second request for

production, "which requests any and all documents identified in defendants' supplemental initial

disclosures". [91] at 4.  Defendants identified several categories of documents in their initial

disclosure, including "'Plan documents,' 'Communications between the Plan, the Plan Sponsor,

the Plan Administrator and/or Plan recordkeepers and Plan participants[,] 'the CGF Health

System;/Kaleida Health Board of Directors meeting minutes, agendas and materials for the

Board['], 'Plaintiffs' account records', [and] 'plaintiff's employment records.'"  Coheley

Declaration, ¶92.  Defendants objected to this request, claiming it was "overbroad and

burdensome, specifically containing no temporal limitation and purportedly seeking documents

dating to the Plan's creation in 1956 and regardless of whether they relate or are material to the

[any] of the claims or defenses alleged in this action" and because it was "vague, specifically

failing to identify with any specificity the documents sought to be produced".  Id., ¶91.

Rule 26(a)(1)(A)(ii) requires a party to provide "a copy - or a description by

category and location - of all documents, electronically stored information, and tangible things

that the disclosing party has in its possession, custody, or control and may use to support its

claims or defenses, unless the use would be solely for impeachment".  Rule 26(a)(1)(A)(ii)

(emphasis added).  Accordingly, plaintiffs' request for documents described in defendants' initial

disclosure was limited by the language of Rule 26 to those documents, which defendants elected

to describe by category, that defendants determined they "may use to support [their] claims or

defenses".

Unless defendants intend to use "documents dating to the Plan's creation in

1956", plaintiffs' request does not encompass those documents.  Further, plaintiffs' request is

-7-

only as vague as defendants' initial disclosure.  If defendants' own description of the documents in their initial disclosure that they "may use to support [their] claims or defenses" was so vague that they themselves are unable to determine to which documents they referred, plaintiffs' request for those same documents cannot be stated with any more clarity.

Accordingly, plaintiffs' motion to compel defendants' response to this request for production is granted.  Defendants must provide to plaintiffs the documents responsive to this request, or disclose by Bates number the documents already produced that are responsive to this request, on or before December 20, 2024.

### 7.    Redactions Marked Non-Responsive

Plaintiffs move to compel defendants to "reproduce documents without impermissible redactions marked as 'Non-Responsive.'"  [91] at 5.  Plaintiffs note that defendants produced "numerous documents with impermissible redactions marked as 'Non-Responsive.'"  Plaintiffs' Memorandum of Law [42-1] at 20.  They argue that, except for privilege, redactions are not permissible.  Id.

Defendants assert that they "properly redacted the non-responsive materials from its production", including information related "to the business and operation of Kaleida, including confidential financial hospital system administration information".  Coheley Declaration [50-1], ¶114.  They argue that "redaction of confidential business and financial information from meeting notes was proper".  Defendants' Memorandum of Law [50] at 10.

Plaintiffs reply that the caselaw relied upon by defendants is distinguishable and that they fail to provide any argument why the Stipulation and Order of Confidentiality (the

"Confidentiality Order") [15] in this case is insufficient to protect any confidential information in the documents.  Plaintiff's Reply [54] at 5-6.

I agree that the cases relied upon by defendants are distinguishable.  Both recognize that the general rule is that "courts ordinarily do not permit parties to selectively excise from otherwise discoverable documents those portions that they deem not to be relevant".  LPD New York, LLC v. Adidas America, Inc., 2020 WL 6784179, *1 (E.D.N.Y. 2020); *see also* Engage Healthcare Communications v. Intellisphere, LLC, 2017 WL 3624262, *3 (D.N.J. 2017) ("[t]he majority of the cases cited by the parties . . . clearly state that unilateral redactions based on one party's subjective view of relevancy are improper").  In both cases, redactions were permitted based upon good cause shown due to the special circumstances of each case and after *in camera* inspection of the redacted materials.  In LPD, for example, and after *in camera* review of the documents at issue, the court held:

> "Given the conduct of LPD's counsel in this case (including counsel's previous disclosure of documents designated by adidas as Attorneys'-Eyes-Only to counsel's non-lawyer client), coupled with the highly commercially sensitive nature of the redacted portions of the documents . . . the Court concludes that this case warrants a departure from the aforesaid general rule, with adidas being permitted to redact competitively sensitive portions of the licensing agreements that are not relevant to the issues in this case."

LPD, 2020 WL 6784179, *1 (emphasis added).  Notwithstanding this holding, the court found that adidas had improperly redacted some relevant information and was ordered to un-redact those portions of the agreements at issue, "subject to the confidentiality designation selected by adidas in good faith".  Id. at *2.

Similarly, in Engage, the special master overseeing discovery in that case found there were special circumstances that warranted departure from the typical rule:

"In the ordinary course, non-relevant information in an otherwise
responsive document should be produced pursuant to [Rule] 34.
Moreover, non-relevant information that is proprie[tary] in nature
that is contained in an otherwise responsive document should
typically be produced pursuant to a [Discovery Confidentiality
Order] and designated as a "Confidential" or "Attorneys' Eyes
Only" document, unless the particular circumstances of the case
dictate otherwise. Only the presence of unique circumstances
should necessitate the Court's involvement with non-relevant
information. While it is not necessary at this juncture to define the
point at which the parties should involve the Court or Special
Master with non-relevant information, the Special Master is
satisfied that this case warrants it."

<u>Engage</u>, 2017 WL 3624262, *5. The special circumstances present there included "that the

parties are direct competitors in the medical publishing industry, the principals of the parties are

brothers, Plaintiffs' counsel has represented Plaintiffs' for many years in both litigation and non-

litigation matters, and the redacted documents at issue contain highly sensitive and proprietary

data that is not relevant to the trademark issues in this case". <u>Id.</u>

Here, defendants identify no such special circumstances. Plaintiffs are current or

former employees, not competitors. A Confidentiality Order [15] is in place in this case.

Defendants have not alleged that plaintiffs' attorneys have engaged in any misconduct

concerning other documents produced pursuant to the Confidentiality Order.

Further, defendants did not state any reason why disclosure of the non-relevant

information pursuant to the Confidentiality Order [15] would be insufficient. They allege that

they produced "responsive and relevant Board materials, including complete Board meeting

minutes, Board Committee meeting minutes and reports, internal reports, retreat materials, etc.

from 1998 through 2000", which included information "related to the business of Kaleida,

including confidential financial hospital system administration information that is not responsive

to Plaintiffs' discovery requests and, moreover, is not relevant to this action". Defendants'

Memorandum of Law [50] at 9.  Defendants allege that they "redacted the non-responsive information in these materials from the documents produced".  Id.

However, it is not for defendants to unilaterally determine what is relevant and to redact purportedly irrelevant information without court permission.  "[S]uch redactions breed suspicions and deprive the reader of context."  Christine Asia Co., Ltd. v. Alibaba Group Holding Limited, 327 F.R.D. 52, 54 (S.D.N.Y. 2018).  I agree with the court in Engage that "the appropriate course of action should be for the disclosing party to make an application to the [court] regarding the documents at issue".  No such motion is at issue here.

Accordingly, I grant plaintiffs' motion to compel defendants to serve unredacted copies of the redacted documents marked "Non-Responsive", subject to appropriate designation under the Confidentiality Order, and instruct defendants to do so on or before December 20, 2024.

### 8.    Request for Production of Documents Nos. 4, 9, and 26

Plaintiffs moved to compel defendants' response to "plaintiffs' request for production of documents necessary to calculate and verify the benefits that were paid and those that should have been paid to class members, including documents responsive to plaintiffs' request for productions Nos. 4, 9, and 26".  [91] at 5.  I will address each of these requests separately.

### a.    Request No. 4

Request No. 4 "seeks documents filed with the Department of Labor ("DOL") concerning the Plan, such as Forms 5500s".  Plaintiffs' Memorandum of Law [42-1] at 21. Plaintiffs focus their argument on the Forms 5500s and argue they have "high relevance" "to

verify benefit calculations". <u>Id.</u>  They argue that defendants "should be compelled to produce all Forms 5500s filed with the DOL concerning the Plan from 1998 through the present". <u>Id.</u>

Defendants respond that they objected to plaintiffs' request on grounds that the temporal scope was overbroad, but produced "a number of documents exchanged with the Department of Labor relating to the 1999 Amendment, including documents specifically relating to the cash balance provisions".  Coheley Declaration, ¶¶ 98-99.  They argue that the Form 5500s are not relevant and would not assist the parties to verify benefit calculations because these forms "include[] information for the ***entire Plan***, including the Legacy Plans  - [they] do[] not separate out information for the cash balance accounts that are the subject of this action".  <u>Id.</u>, ¶ 100 (emphasis in original).  The form reflects information "for approximately 12,000 Plan participants", while there are approximately 2,577 putative class members. <u>Id.</u>  In addition, defendants note that "Form 5500s are publicly available for the years 2009 to the present" and that, once filed, they are "only required to maintain a copy of the form for six (6) years". <u>Id.</u>, ¶ 101.

Plaintiffs reply that defendants do not "seriously contest" the relevance of the Forms 5500.  Sanderson Affirmation [54-1], ¶40.  They argue that defendants' arguments "demonstrate . . . that production would involve minimal burden and that the documents contain relevant information". <u>Id.</u>, ¶42.

"Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept. . . . A district court has broad discretion in determining relevance for discovery purposes." <u>Klosin v. E.I. Du Pont De Nemours and Co.</u>, 2022 WL 2965617, *2 (W.D.N.Y. 2022).  I do not agree that defendants do not "seriously contest" the relevance of the Forms 5500. Further, it is not defendants' burden to demonstrate the absence of relevance in the first instance.

"The burden of demonstrating relevance is on the party seeking discovery". <u>US Bank</u>, 2012 WL 5395249 at *3. Here, plaintiffs have not made any argument concerning how the information on the Form 5500s is relevant, or how it will help them verify any benefit calculations. Defendants represented that the Form 5500 "includes information for the ***entire Plan***, including the Legacy Plans - it does not separate out information for the cash balance accounts that are the subject of this action". Coheley Declaration [50-1], ¶100. Defendants also demonstrate, by attaching a Form 5500, the veracity of this claim. In Reply, plaintiffs assert only that the Form 5500s "contain relevant information". Sanderson Affirmation [54-1], ¶ 42. They do not, however, point to a single entry on the form, which totals 93 pages with attached schedules, that contains information relevant to the "heart of plaintiffs' claims": "whether class members reasonably but mistakenly believed that growth in their cash balance benefit [under the Plan] equaled growth in their pension benefit based on what defendants communicated to them". Plaintiffs' Memorandum of Law [42-1] at 10. Nor do they point to any page, schedule, or entry that identifies individual recipients or their account balances.

        I find that plaintiffs failed to satisfy their burden to demonstrate that the Form 5500s are relevant to their claims. Accordingly, this portion of their motion is denied.

### b.       Request No. 9

        Request No. 9 "seeks any and all documents that are intended to guide, advise, or provide support for defendants in the operation, administration, management, and oversight of the Plan". Plaintiffs' Memorandum of Law [42-1] at 21. They request that this court compel defendants to "produce all actuarial evaluations concerning the Plan from 1998 through the present". <u>Id.</u>

Defendants respond that the term "actuarial evaluation" is vague and that plaintiffs have not stated how such a document is "relevant or necessary to support any of the claims or defenses in this action". Coheley Declaration [50-1], ¶107. Moreover, defendants argue that, if plaintiffs intended to refer to an "actuarial valuation", any such valuation "would include information for the entire Plan, including the Legacy Plans and all of the Plan participants, not just the putative class members". Id., ¶108. Finally, as any such valuation is just a valuation, defendants argue that "they do not contain any 'guidance, advice, or support' such that these documents would be responsive to Request No. 9". Id.

In reply, plaintiffs again argue that defendants "fail to seriously contest the relevancy" of the actuarial valuations they are requesting. Sanderson Affirmation [54-1], ¶40. They claim that "[a]ctuarial valuations are relevant for, *inter alia*, to evaluate what assumptions the Plan's enrolled actuary made in calculating the Plan's estimated benefit liabilities, such as the form in which it is expected participants will request benefits, *i.e.*, as an annuity or lump sum". Id., ¶43.

I agree with plaintiffs that "assumptions the Plan's enrolled actuary made in calculating the Plan's estimated benefit liabilities" is relevant to their claims. However, as with the Form 5500s, they have failed to articulate otherwise how a document that refers to the entire Plan in the aggregate, "including the Legacy Plans and all of the Plan participants, not just the putative class members" relates to "whether class members reasonably but mistakenly believed that growth in their cash balance benefit [under the Plan] equaled growth in their pension benefit based on what defendants communicated to them". Plaintiffs' Memorandum of Law [42-1] at 10.

Accordingly, to the extent that any "actuarial valuation" exists and contains "assumptions the Plan's enrolled actuary made in calculating the Plan's estimated benefit liabilities", plaintiffs' motion to compel production of any such document is granted, as limited by my September 25, 2023 Decision and Order [58]. I therefore instruct defendants to serve any such "actuarial valuation", or to state that no such document exists, on or before December 20, 2024. Plaintiffs' motion with respect to this request is otherwise denied.

### c.    Request No. 26

This request "seeks all pension benefits statements for the named plaintiffs". Plaintiffs' Memorandum of Law [42-1] at 22. They complain that, in their responses, defendants "have only produced statements for the period of 2011 through 2021 for all named plaintiffs and then for the quarter starting on July 1, 1999 for three out of five named plaintiffs". Id. Plaintiffs contend that "defendants are required to maintain these records under 29 U.S.C. §1059(a)". Id. They move to compel defendants "to conduct a thorough and adequate search for such documents, which includes those in possession of the Plan's service providers, and produce all responsive documents, or supplement their response by describing the efforts they undertook to locate responsive information". Id.

Defendants respond that the Plan "is **_not_** required to provide and/or maintain quarterly statements for the Named Plaintiffs . . . Kaleida is only required to provide a pension statement at least once every 3 years to each participant, to include the total benefits accrued and the non-forfeitable pension benefits." Coheley Declaration [50-1], ¶111. They argue that plaintiffs' "reliance on 29 U.S.C. §1059(a) is misplaced, as that statute does not require Kaleida to maintain benefit statements". Id. Defendants explain that "neither Kaleida nor the Plan's

recordkeeper have the Named Plaintiffs' benefit statements for the period prior to 2011." Id.,

¶112.

Plaintiffs do not address defendants' arguments in their reply.  Defendants are

correct that 29 U.S.C. §1059 does not address retention of benefit statements:

> "[E]very employer shall . . . maintain records with respect to each
> of his employees sufficient to determine the benefits due or which
> may become due to such employees.  The plan administrator shall
> make a report, in such manner at such time as may be provided in
> regulations . . . to each employee who is a participant under the plan
> and who -
> > (A) Requests such a report . . .,
>
> > (B) Terminates his service with the employer, or
>
> > (C) Has a 1-year break in service . . . .
>
> . . . The report required under this paragraph shall be in the same
> form, and contain the same information, as periodic benefit
> statements under section 1025(a) of this title".

29 U.S.C. §1059(a)(1).  Section 1025(a) requires "[t]he administrator of a defined benefit plan"

to "furnish a pension benefit statement- (i) at least once every 3 years . . . and, (ii) to a participant

or beneficiary of the plan upon written request."

Neither party cites any statute or regulation indicating that defendants were

required to keep copies of benefit statements for any period prior to 2011 or for any time

thereafter.  Further, plaintiffs do not contest defendants' representation that neither they, "nor the

Plan's recordkeeper have the Named Plaintiffs' benefit statements for the period prior to 2011".

Coheley Declaration [50-1], ¶112.  Moreover, defendants have provided a reasonable

explanation why they possess statements going back to 2011, but not before.  Accordingly,

plaintiffs' motion to compel additional disclosures in response to this request is denied.

9.    **Privilege Log**

Plaintiffs' final request is that defendants be compelled "to produce responsive

documents withheld on the basis of privilege or have them properly listed on a privilege log.

[91] at 5.  Plaintiffs theorize that defendants "are apparently withholding a significant number of

documents on the basis of privilege" because they "object[ed] on the basis of privilege" to

discovery requests numbers 14, 16, 18, 20, 22, 31, 32, 33, 35, 36, 39, and 42.  Plaintiff's

Memorandum of Law [42-1] at 19.  Plaintiffs complain that the documents withheld in response

to these demands are not listed on defendants' privilege log:

> "Despite claiming that privileged documents exist in response to at
> least 12 different document requests (including, among other
> things, litigation holds), the defendants have produced four entries,
> all relating back to documents from 1998, and none referencing
> litigation holds or the responses to the twelve requests to which
> the[y] conceded they are withholding documents. . . . The
> defendants therefore are obligated to produce at once the
> responsive documents or have them properly listed on a privilege
> log".

Id. at 20.  By way of example, plaintiffs assert that "counsel, as well [as] employees internal to

the defendants, would have almost undoubtedly conducted interviews and other forms of

investigations documented in writing that have not been produced or placed on [a] privilege log

but would constitute responsive documents".  Id. at 20, n. 8.

Defendants agree "that a party withholding any document on the basis of privilege

must produce a log reflecting the basis for that privilege".  Coheley Declaration [50-1], ¶ 116.

They contend, however, that "[p]laintiffs fail to understand the difference between documents

that are responsive to discovery requests that are withheld on the basis of privilege and attorney

work product documents created after litigation has been initiated".  Id., ¶117.  They also assert

that privilege logs are "commonly limited to documents created ***before*** the date litigation was

-17-

initiated".  Defendants' Memorandum of Law [50] at 12 (emphasis in original).  They argue that

this limitation "makes practical sense, otherwise attorneys would be required to log every single

email communication with their clients regarding the substance of the claims in an action - and

would be required to constantly supplement such privilege log until the litigation ended".  Id.

Defendants note that this was communicated to plaintiffs concerning their own privilege log, but

that "[p]laintiffs understood this to be a one-side 'exception' applying only to communications

between counsel and the Named Plaintiffs".  Id. at 13.

       In reply, plaintiffs clarify that defendants "were not required to produce or log

every post-litigation communication" and assert that they seek only "relevant post-litigation

documents".  Reply [54] at 9.  Specifically with respect to litigation hold documents, plaintiff

asserts that "litigation holds to third parties, such as the Plan's actuary or recordkeeper, protrude

beyond potential issues with defendants' preservation of documents . . . At the very least,

defendants must disclose the names of the individuals or entities who received the notices and

the dates they were received."  Id.  Finally, plaintiffs argue that defendants waived any claim of

privilege in such documents by failing to put them on a privilege log and request that the court

"order that any relevant responsive documents withheld on the basis of privilege, and not

identified on a privilege log, be produced to plaintiffs".  Id. at 10.

> "Privileged documents are exempt from disclosure. . . . The party
> asserting the privilege must establish the essential elements of the
> privilege.  . . . To invoke the attorney-client privilege, a party must
> demonstrate that there was : (1) a communication between client
> and counsel, which (2) was intended to be and was in fact kept
> confidential, and (3) made for the purpose of obtaining or
> providing legal advice."

United States v. Construction Products Research Inc., 73 F.3d 464, 473 (2d Cir. 1996).

Because plaintiffs clarify that they do not expect post-litigation communications to appear on any privilege log, and that their "requests are limited in scope and simply seek relevant post-litigation documents" ([54] at 9) , I will not address defendants' arguments concerning attorney-client privilege here, as those appear to be moot.  However, I note that plaintiff's concession means that attorney-client communications that are also "documents" will not appear on the privilege log.

The only requests remaining, therefore, are those in response to which defendants asserted "attorney work product doctrine" as an objection: 20, 22, 31, 35, 36, and 39. Accordingly, I consider the work product doctrine only with respect to these six document requests.  These requests are for documents concerning:

- "creation of the Plan, or any amendment of the Legacy Plans to create the Plan, including the cash balance provisions of the Plan" ([42-4] at 15 (request no. 20));

- "any discussion of the term or phrase 'wear-away,' whether or not concerning the Plan, including but not limited to discussions concerning actual or potential lawsuits alleging liability with respect to wear-away" (id. at 16 (request no. 22));

- specific statements that appeared in an undated brochure (id. at 20 (request no. 31));

- litigation holds and documents related to their generation or issuance, instructions for preservation, individuals to whom they were sent, and enforcement (id. at 22 (request no. 35));

- "communications with Consultants, recordkeepers, and/or administrators with respect to preservation of hard-copy documents and electronically-stored information ("ESI") potentially relevant to this action" (id. at 22 (request no. 36));

- "documents concerning, or referred to in responding to, Plaintiff's First Set of Interrogatories" (id. at 23 (request no. 39)).

Rule 26(b)(3) outlines the parameters of the privilege:

> "Ordinarily, a party may not discover documents and tangible
> things that are prepared in anticipation of litigation or for trial by
> or for another party or its representative (including the other
> party's attorney, consultant, surety, indemnitor, insurer, or agent)."

This doctrine "is intended to preserve a zone of privacy in which a lawyer can

prepare and develop legal theories and strategy with an eye toward litigation, free from

unnecessary intrusion by his adversaries". United States v. Adlman, 134 F.3d 1194, 1196 (2d

Cir. 1998). "To invoke this privilege, a party generally must show that the documents were

prepared principally or exclusively to assist in . . . ongoing litigation". Construction Products, 73

F.3d at 473. "Documents prepared in the ordinary course of business are not protected as work

product unless the proponent of the protection demonstrates that the documents would not have

been created 'but for' the prospect of litigation". Lolonga-Gedeon v. Child & Family Services,

2012 WL 1714914, *8 (W.D.N.Y. 2012)

      The parties focus here only on post-commencement documents.  Further, as

plaintiffs have conceded that post-commencement, attorney-client communications need not be

placed on any privilege log, the universe of potentially responsive documents is narrowed to only

those documents that: 1) are not attorney-client communications; and 2) were prepared post-

commencement by Kaleida or its attorneys (or other representatives) to assist in this ongoing

litigation.  However, we do not know here if any documents created after the commencement of

litigation, that are not attorney-client communications, and that are responsive, were withheld.  It

is therefore impossible to know whether any such documents, if they exist, are shielded by the

work-product privilege.

      However, to the extent that such documents do exist, "[i]n analyzing the

applicability of the work-product doctrine, courts distinguish between factual and opinion work

product. . . . Whereas opinion work product includes mental impressions, conclusions, opinions,

or legal theories of an attorney, . . . non-opinion or factual work product includes nonprivileged

facts". <u>Bento v. East Hampton Family Medicine</u>, 2020 WL 7481330, *5 (E.D.N.Y. 2020)

(internal citations and quotations omitted).  It is not uncommon to assume that documents

created by a party or the party's attorney after litigation has commenced, or is contemplated, fall

within the privilege and are not required to be placed upon a privilege log.  *See* <u>Equal</u>

<u>Employment Opportunity Commission v. Frontier Hot-Dip Galvanizing, Inc.</u>, 2023 WL

4999831, *4 (W.D.N.Y. 2023) (noting that "any documents exchanged among . . . the EEOC and

any claimants subsequent to conciliation failure are protected by the . . . work product doctrine"

and ordering that the EEOC provide a privilege log only for documents "preceding conciliation

failure" that are withheld due to privilege); *see also* <u>United States v. Bouchard Transportation</u>,

2010 WL 1529245, *2 (E.D.N.Y. 2010) ("privilege logs are commonly limited to documents

created before the date litigation was initiated.  This is due to the fact that, in many situations, it

can be assumed that all documents created after charges have been brought or a lawsuit has been

filed and withheld on the grounds of privilege were created 'because of' the pending litigation").

      However, this does not mean that non-privileged documents created after the

commencement of litigation are not discoverable. Work-product protection is withheld "from

documents that are prepared in the ordinary course of business or that would have been created

in essentially similar form irrespective of the litigation".  <u>Adlman</u>, 134 F.3d at 1202; *see also*

<u>Lolonga-Gedeon</u>, 2012 WL 1714914 at *8 ("[d]ocuments prepared in the ordinary course of

business are not protected as work product unless the proponent of the protection demonstrates

that the documents would not have been created 'but for' the prospect of litigation").

      Some of the types of documents identified by plaintiffs in their papers, such as

litigation holds, may or may not be shielded by the work product doctrine:

> "[A] litigation hold, just like any other communication with
> counsel, may constitute or contain legal advice and work product.
> There is no reason why a litigation hold memo should be *per se*
> excluded from protection.  Rather, the content and circumstances
> of its issuance, as well as the context of the litigation, will
> determine applicability of any privilege or work product
> protection."

Pearlstein v. Blackberry Limited, 2019 WL 1259382, *19 (S.D.N.Y. 2019).  However,

statements and notes of interviews with a client (or prospective client) are protected work

product.  *See* Frontier Hot-Dip, 2023 WL 4999831, *4 ("statements and notes of interviews with

prospective class members are protected work product").

      Accordingly, to the extent that defendants have withheld any responsive

documents created post-commencement that are <u>not</u> subject to the work-product privilege, they

must be produced, and I instruct defendants to do so on or before December 20, 2024.  With

respect to litigation hold letters, defendants shall submit these to the court for *in camera* review

by December 13, 2024 to determine whether they "constitute or contain legal advice and work

product".  <u>Pearlstein</u>, <u>supra</u>.  In these respects, plaintiffs' motion is granted.  However, plaintiffs'

motion to compel defendants to produce privileged, post-commencement documentation or a

privilege log for withheld privileged, post-commencement documents is otherwise denied.


**C.      Defendants' Motion for a Protective Order and to Quash**

      Defendants' motion for a protective order and to quash plaintiffs' requests for

admission remains unresolved.  [92] at 4.  On October 2 and October 10, 2023, plaintiffs served

the two Requests for Admission on Kaleida. *See* Cooley Declaration [61-1], ¶14; Plaintiffs'

Request for Admissions dated October 2, 2023 [61-2]; Plaintiffs' Second Set of Requests for

Admissions [61-3].  On October 10, 2023, Kaleida sent a letter to plaintiff objecting to the

Requests on the grounds that they did not seek factual admissions but legal ones relating to its discovery compliance, and that the Requests were otherwise vague, ambiguous, and unsuited to a simple admission or denial. [61-1], ¶¶16, 18-19; *see* Letter [61-4]. Kaleida demanded that plaintiffs withdraw their requests in their entirety. [61-4] at 3-4. Plaintiffs responded by letter dated October 30, 2023, stating that they "d[id] not agree" with the statements in Kaleida's letter and that its response would be deemed an admission. [61-5].

On October 31, 2023, Kaleida filed this motion seeking a protective order to quash those requests in their entirety. Id., ¶23. Kaleida contemporaneously filed "objections and responses" to the Requests. *See* [61-6], [61-7]. In its motion, Kaleida argues that the Requests are improper because (1) they seek legal admissions rather than factual ones; (2) they relate to discovery compliance issues that are "sharply disputed"; and (3) the Requests are vague, ambiguous, and unsuited to a simple admission or denial. [61-1], ¶16; [61]-8 at 9-18.

As an initial matter, I note that Kaleida brings this motion pursuant to Rule 26(c), which requires "a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action". Fed. R. Civ. P. 26(c). The meet-and-confer obligation generally requires a showing of a "genuine effort to resolve the dispute by determining what the requesting party is actually seeking; what the discovering party is reasonably capable of producing that is responsive to the request; and what specific genuine issues, if any, cannot be resolved without judicial intervention". AIU Insurance Company v. TIG Insurance Company, 2008 WL 4067437, *3 (S.D.N.Y. 2008) (citations omitted).

Kaleida represents that it satisfied this requirement by way of its October 10th letter to plaintiffs, wherein it objected to the Requests and demanded that they be withdrawn in

their entirety. [61-1], ¶17; [61-4]. I am skeptical that a single demand to withdraw a discovery request "or else" constitutes conferring in good faith. *See* Associates Insurance Company v. George J. Castle, Inc., 2005 WL 8173548, *8 (W.D.N.Y. 2005) ("[a] single letter from counsel has been found to not sufficiently satisfy the duty to confer"). However, plaintiffs' curt response, disagreeing with "a number of statements" in Kaleida's letter and deeming the Requests admitted, suggests that an attempt at compromise may have been futile. *See* UMB Bank, N.A. v. Sanofi, 2017 WL 3738457, *2 (S.D.N.Y. 2017) ("a court may waive the meet-and-confer requirement if it is clear that any conference would be fruitless").

Turning to the propriety of the Requests, Rule 36 provides that "[a] party may serve on any other party a written request to admit . . .  the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents". Rule 36(a)(1). "The purpose of a Rule 36 request is to narrow the issues for trial." Woodward v. Holtzman, 329 F.R.D. 16, 25 (W.D.N.Y. 2018). Properly employed, requests for admissions "reduce the costs of litigation by eliminating the necessity of proving facts that are not in substantial dispute, to narrow the scope of disputed issues, and to facilitate the presentation of cases to the trier of fact." T. Rowe Price Small-Cap Fund Inc. v. Oppenheimer & Co., Inc., 174 F.R.D. 38, 42 (S.D.N.Y. 1997).

Regarding requests for admissions, "the requesting party bears the burden of setting forth its requests simply, directly, not vaguely or ambiguously, and in such a manner that they can be answered with a simple admit or deny without an explanation, and in certain instances, permit a qualification or explanation for purposes of clarification". Henry v. Champlain Enterprises, Inc., 212 F.R.D. 73, 77 (N.D.N.Y. 2003). A party on whom a request for admissions has been served may (1) do nothing; (2) move for an extension; (3) move for a

protective order; (4) admit the matter; (5) deny the matter; (6) set out the reasons why it cannot truthfully admit or deny the matter; or (7) object to the request for an admission.  8B Federal Practice & Procedure § 2259 (Wright & Miller 3d ed.).

"Provided the demand is understandable and straightforward, calls for relevant information, and does not violate a recognized privilege, an objection to a request to admit is improper and a mere statement that the responding party is unable to admit or deny, or lacks knowledge is insufficient." Booth Oil Site Administrative Group v. Safety-Kleen Corp., 194 F.R.D. 76, 79 (W.D.N.Y. 2000). However, "[a]mbiguous and vague requests which cannot be fairly answered will not be enforced". Id.

Kaleida objects to the Requests, first arguing that they improperly call for admissions of law or procedure rather than admissions of fact. [61-8] at 5-7. This argument is unsupported.  In the first instance, requests for admission may - by the very language of Rule 36 - touch upon matters of "facts, the application of law to fact, or opinions about either".  Rule 36(a)(1)(A). While "[p]ure requests for the admission of law or requests seeking a legal conclusion or an admission of the truth of a legal conclusion are improper", as are "requests for the admission of law unrelated to the facts of the case", (10A Federal Procedure, Lawyers Edition § 26:661 (citations omitted)), none of the Requests call for legal admissions of this kind.

Kaleida does not point to any specific request posing an improper legal inquiry, instead it argues generally that "[its] compliance with its discovery obligations is not a 'fact' subject to admission, denial, or explanatory objection". [61-8] at 10. However, as discussed, a request for information may properly call for an "application of law to fact". Rule 36(a)(1)(A). Accordingly, "the rule allows an admission by a party as to what its obligations were as a matter of law". 10A Federal Procedure, Lawyers Edition § 26:661.

In any event, Kaleida reads too much into the Requests. *See* <u>Woodward v. Holtzman</u>, 329 F.R.D. 16, 26 (W.D.N.Y. 2018) ("[a] response may not be evasive by engaging in overly technical reading of the request"). For example, Request for Admission No. 1 calls for Kaleida to "[a]dmit that you have produced all documents that disclosed the rate of future benefit accruals within 15 days of the effective date of the July 1999 Plan amendment". [61-2] at 4. This is plainly a factual inquiry. Either Kaleida has produced the documents in question or it has not. The request does not ask, in form or in effect, whether Kaleida has complied with its discovery obligations. That is a question that Kaleida has seemingly already answered, having stated "on numerous occasions, that it 'has produced all documents in its possession, custody, or control relating to the' relevant allegations". Cooley Declaration [61-1], ¶ 4.

Plaintiffs, in their response, paraphrased the discovery-related Requests as stating: "[h]ave you produced all the documents you have on issue X?". [64] at 2. That is a slightly different question than posed by the Requests, which are not limited to the documents in defendants' possession.  Therefore, I will deem such a caveat added to all the Requests regarding production.  Specifically, Requests Nos. 1, 2, 3, 5, 6, 7, 8, 9, and 10[2] shall be modified to include only the documents "in Defendants' possession".  Moreover, to the extent that the Requests implicate document demands that were subject to my Decision and Order [58] concerning temporal scope, those Requests shall be deemed to also include the appropriate temporal limitation.

Those inquiries, as amended, are susceptible of a simple admission or denial, with brief qualification to the extent necessary. *See* <u>Henry</u>, 212 F.R.D. at 78 (some qualification of an admission or denial may be warranted to the extent it "provide[s] clarity and lucidity to the

---

[2]    The Requests feature two Request for Admission No. 9s. [61-2] at 6. I will consider the second of these to be Request for Admission No. 10.

genuineness of the issue and not to obfuscate, frustrate, or compound"). By way of example, if Kaleida has withheld some documents that would be responsive to a particular Request out of a good-faith belief that such documents were privileged, then a simple explanation to that effect may be more useful than a simple denial.

Kaleida's further arguments that the Requests improperly concern matters of discovery and/or "sharply disputed" issues are also unpersuasive. It is true that "Rule 36 is not a discovery device" (T. Rowe Price, 174 F.R.D. at 42), and its purpose is "not to lead to the discovery of admissible evidence as with other discovery devices provided by Federal Rules of Procedure such interrogatories, document production and disposition practice." Woodward, 329 F.R.D. 16, 25 (W.D.N.Y. 2018). That is, "the purpose of [a request under Rule 36] is not to discover information but to narrow the issues" in preparation for trial. Al-Jundi v. Rockefeller, 91 F.R.D. 590, 594 (W.D.N.Y. 1981).

Still, Rule 36 defines the proper scope of a request for admission as "the truth of any matters within the scope of Rule 26(b)(1)", which would seem to plainly include matters of disclosure. Rule 36(a)(1). Courts that have considered requests such as the ones raised here have approved of them. See Aerojet Rocketydyne, Inc. v. Glob. Aerospace, Inc., 2022 WL 874844, at *6 (E.D. Cal. 2022) (compelling a response to a request stating "Admit You have produced every document dated prior to October 4, 2016 related to Condon & Forsyth's investigation and/or evaluation of Aerojet's Pre-Denial Claim"). As these requests for admission contemplate only simple, straightforward admissions or denials, I consider them to be properly in the vein of narrowing issues rather than perpetuating them.

Finally, a request for admission is not limited to "matters that the propounding party believes to be undisputed." U.S. Bank National Association v. Triaxx Asset Management

LLC, 2020 WL 9549505, *2 (S.D.N.Y. 2020). While there is some diverging caselaw on this point, I fail to see how the existence of any dispute prevents Kaleida from simply answering the Requests. *See* Rule 36(a) Advisory Committee Note to the 1970 Amendment ("Courts have also divided on whether an answering party may properly object to request for admission as to matters which that party regards as 'in dispute.' (citing cases). The proper response in such cases is an answer."); *see also* U.S. Bank National Association, 2020 WL 9549505 at *2.

"The very purpose of the request is to ascertain whether the answering party is prepared to admit or regards the matter as presenting a genuine issue for trial. In his answer, the party may deny, or he may give as his reason for inability to admit or deny the existence of a genuine issue. The party runs no risk of sanctions if the matter is genuinely in issue, since Rule 37(c) provides a sanction of costs only when there are no good reasons for a failure to admit." Rule 36(a) Advisory Committee Note to the 1970 Amendment.

However, as noted above, "[a]mbiguous and vague requests which cannot be fairly answered will not be enforced". Booth Oil, 194 F.R.D. at 79.  To that end, I agree with Kaleida regarding Request for Admission No. 11, which asks Kaleida to admit it is "not aware of any potential class member, other than those whose employment with [Kaleida] involved employee benefits, who were aware of any potential negative impact on their benefit arising from the July 1999 Plan amendment". [61-3] at 4. That request is too complex to be "understandable and straightforward" (Booth Oil, 194 F.R.D. at 79) and is not capable of a simple admission or denial - at least, one that would be useful in simplifying issues for trial. Therefore, Request for Admission No. 11 will be stricken.

For these reasons, defendants' motion for a protective order is granted to the extent of striking plaintiff's Request for Admission No. 11 and modifying Requests Nos. 1, 2, 3,

5, 6, 7, 8, 9, and 10, but otherwise denied.  I instruct defendants to answer the remaining

Requests, as modified, on or before December 20, 2024.


**D.     Defendants' Motion to Quash Non-Party Subpoenas**

Defendants move to quash non-party subpoenas that plaintiffs served upon non-

parties Mercer Investing Consulting ("Mercer"), a financial services firm, and Nixon Peabody

LLP ("Nixon"), a law firm.  [73], *see also* Attorney Declaration of Catherine Grantier Cooley

("Cooley Declaration") [73-1];  [33-3] (Subpoena Duces Tecum to Mercer) and [33-4]

(Subpoena Duces Tecum to Nixon).

This is defendants' second motion to quash these subpoenas.  *See* Notice of

Motion to Quash Non-Party Subpoenas [33].  I filed a Decision and Order addressing

defendants' first motion on March 27, 2024.  [72].  My Decision and Order focused on whether

the Western District of New York was the proper district within which to bring the motion to

quash, as it was unclear from defendants' papers whether either Mercer or Nixon had an office,

or regularly transacted business within 100 miles of plaintiffs' counsel's office.  Id. at 7, 9-10.  I

denied defendants' motion without prejudice and permitted defendants to re-file their motion

within thirty days, instructing that their re-filed motion "must address whether this [c]ourt is in

the proper district to rule on their motion".  Id. at 10.

Defendants did so.  They clarified that Mercer maintains an office in Rochester,

New York, within the Western District of New York, and that Mercer provided its services to the

Plan from its Rochester, New York location.  Cooley Declaration [73-1], ¶¶ 11-12.  Defendants

produced documentation demonstrating this was the case.  Id., ¶¶ 13-15, Exhibits A, B, and C.

Defendants further clarified that Nixon provided services to the Plan from its Rochester, New

York location.  Id., ¶ 21.  They produced documentation demonstrating this was the case.  Id.,

¶¶22-23, Exhibits D and E.  Plaintiffs do not contest any of this information.  Attorney

Affirmation of Adam T. Sanderson ("Sanderson Affirmation") [79], ¶ 23 ("[p]laintiffs do not

dispute that the Western District of New York is the district of compliance").

   Further, the non-parties had an opportunity to make submissions to the court

concerning the renewed motion to quash.  Following defendants' filing of the renewed motion, I

instructed them to serve their motion upon the non-parties and set a deadline for the nonparties to

make submissions to the court concerning:

> "[O]n or before April 30, 2024, defendants shall serve upon each
> of the non-parties a copy of the motion to quash and a copy of this
> Text Order. Should either non-party wish to make a submission to
> the court concerning the motion to quash, it may do so on or before
> May 10, 2024 by sending their submission to
> mccarthy@nywd.uscourts.gov."

Text Order [74].  To date, the court has not received any submission from Mercer or Nixon.

Accordingly, Mercer and Nixon have not disputed that they provided their services to defendants

from their Rochester offices.

    For all these reasons, I find that defendants have satisfied their burden to

demonstrate that this is the correct district in which to bring their motion to quash.  *See* Tapjets

Inc. v. United Payment Services, Inc., 2020 WL 13581674, *9 (E.D.N.Y. 2020) ("[t]he burden of

persuasion in a motion to quash a subpoena is borne by the movant").

   Turning to the substantive arguments, Kaleida requests that the subpoenas be

quashed in their entirety for the reasons set forth in the papers filed in support of their original

motion to quash.  Coheley Declaration [73-1], ¶ 31 (*citing* their submissions at [33] and [40]).

Mercer is Kaleida's investment consultant in connection with the Plan.  Affidavit of Sarah Pyc-

Shapiro ("Pyc-Shapiro Affidavit") [33-1], ¶¶ 3-4.  Kaleida claims that the information sought by

the subpoena seeks "confidential information relevant to Kaleida's internal deliberations and analyses regarding its [request-for-proposal ("RFP")] process with Mercer; financial records, research, and market analyses; strategic business decisions and negotiations regarding Mercer's advice to Kaleida and the basis for that advice; and advice provided regarding vendors, pricing, and fees, which is specific only to Kaleida".  Id., ¶ 6.  Kaleida asserts that this information contains "highly competitive, confidential information belonging to Kaleida Health including, but not limited to, information surrounding Kaleida's internal analyses relating to its investment strategies, the types of investments considered, review and continual analysis of Kaleida's actual investments, and any associated cost-benefits."  Id., ¶ 7.

Kaleida "engaged [Nixon] to provide legal advice regarding the Plan's design, any amendments, and termination".  Attorney Declaration of James J. Zawodzinski, Jr. ("Zawodzinski Declaration") [33-2], ¶15.  It asserts that the specific requests of the subpoena directed to Nixon "seek the production of documents and/or information protected from disclosure by the attorney/client communication privilege and that are not subject to the fiduciary exception under ERISA".  Id. at ¶ 14.

Plaintiffs counter that defendants do not have standing to challenge the subpoenas, directed to non-parties, on the grounds of relevance or undue burden.  Sanderson Affirmation [79], ¶ 31.  They agree, however, that "a party . . . has standing to challenge subpoenas issued to non-parties where it asserts some right or privilege personal to it, such as an interest in proprietary, confidential information that would be disclosed or an interest in maintaining a privilege that would be breached by disclosure".  Plaintiff's Memorandum of Law [37] at 11 (internal quotations omitted).

In their response with respect to the Mercer subpoena, plaintiffs "agree to not seek any information regarding how Kaleida invested its assets to fund its pension obligations", including a list of specific items that Kaleida identified in its motion papers as "proprietary" and "highly confidential".   Plaintiff's Memorandum of Law [37] at 12-13 (items no. 1-11); *see also* Pyc-Shiro Affidavit [33-1] at 3-4.  In addition, plaintiff agreed that it is not seeking "information regarding the RFP process with Mercer in 2018".  Plaintiff's Memorandum of Law [37] at 13 (item no. 12).

"A party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden. . . . Instead, a non-subpoenaed party has standing only if it has a privilege, privacy or proprietary interest in the documents sought".  Universitas Education, LLC v. Nova Group, Inc. 2013 WL 57892, *5 (S.D.N.Y. 2013).  Here, defendants assert attorney-client privilege with respect to the Nixon subpoena and asserts that the subpoena to Mercer requests "proprietary and highly confidential information".  Defendants' Memorandum of Law [33-5] at 14-18.  Accordingly, I find that defendants have standing to challenge these aspects of the non-party subpoenas.

I address the specific issues concerning each non-party subpoena in turn below.

### 1.    The Mercer Subpoena

Although defendants are without standing to challenge the relevance of the documents requested in the Mercer subpoena, plaintiffs have engaged in discussions with defendants concerning the scope of the documents requested.  *See* Reply Declaration of James J. Zawodzinski, Jr. ("Reply Zawodzinski Declaration") [40-1], ¶¶13-15.  Defendants proposed a red-lined copy of Exhibit 1 to the Mercer subpoena.  *See* [40-3] (Exhibit B to Reply Zawodzinski

Declaration).  Defendants proposed a "counter red-lined" version of the same document. *See* [40-5] (Exhibit D to the Reply Zawodzinski Declaration).

It appears from my reading of the "counter red-lined" version of Exhibit 1 to the Mercer subpoena that the parties are largely in agreement concerning the scope of documents being requested, so long as plaintiffs' acknowledged exclusions for "proprietary" and "highly confidential" materials remain in place.  Defendants complain that plaintiffs "struck the first category of documents set forth in Kaleida's red-lined Exhibit 1 . . . despite the fact that the language proposed by Kaleida was taken directly from Plaintiffs' opposition on this motion".  Reply Zawodzinski Declaration [40-1], ¶17.  However, it appears that the struck material is simply duplicative of the other requests incorporated into Exhibit 1, which defendants did not strike in their red-lined version:

| *Compare* **[40-5] subitems of Item 1** | *To* **[40-5] Items 4-7, 9-10, 14** |
|---|---|
| (a): "consideration given to the merger of . . . the Legacy Plans into the Plan effective as of July 1, 1999" | 4: "consideration given to the merger of the Legacy Plans into the Plan effective as of July 1, 1999" |
| (b): "consideration given to the amendment adding the cash balance provision to the Plan effective July 1, 1999" | 5: "consideration given to the amendment adding the cash balance provisions to the Plan effective July 1, 1999 |
| (c):  "the terms or phrases 'wear away,' and 'anti cutback'" | 7: "concerning the terms or phrases 'wear-away,' and 'anti-cutback' concerning the Plan" |
| (d): "the RFP that resulted in Mercer being selected by Defendants as the retirement plan design consultant in or around 1998" | 9: "the RFP that resulted in Mercer being selected by Defendants as the retirement plan design consultant in or around 1998" |
| (e): "the calculations of opening account balances for Plan participants" | 10: "the calculations of opening account balances for Plan Participants" |
| (f): "communications to putative class members regarding the amendment adding the cash balance provision to the Plan effective | 6: "concerning the amendment adding the cash balance provisions to the Plan effective July 1, 1999" |

| | |
|---|---|
| July 1, 1999, and/or the growth of their benefit under the Plan generally" | |
| (g): "accounting losses, accounting gains, or cost containment defendants considered as a result of the amendment adding the ash balance provisions to the Plan effective July 1, 1999" | 14: "accounting losses, accounting gains, or cost containment Defendants considered . . . as a result of the amendment adding the cash balance provisions to the Plan effective July 1, 1999" |

[40-5] at 6-8.

Except for Item 3, however, defendants did not excise the substance of the remaining categories of requested documents. *See* [40-3] (Exhibit B to Reply Zawodzinski Declaration). Therefore, because plaintiffs and defendants, therefore, agree on these items, and because neither non-party has objected to the relevance or burden imposed by these items, I find no reason to modify these terms, as agreed by the parties.

However, I do exercise my discretion to modify the subpoena to Mercer by incorporating into it the restrictions concerning the "proprietary and highly confidential information" identified by defendants and which plaintiffs agreed to exclude from the documentation they are seeking. *See* Rule 45(d)(3)(B) ("[t]o protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, . . . modify the subpoena if it requires . . . disclosing . . . confidential . . . commercial information").

The parties also disagree concerning the temporal scope of the majority of the requests in Exhibit 1. However, I determined the temporal scope of discovery in this matter in my September 25, 2023 Decision and Order:

> "I agree with plaintiffs that they are entitled to documents demonstrating the considerations involved in defendants' determination to enact the July 1999 amendment, even if those

> documents were created prior to January 1998. . . . However,
> defendants have affirmatively represented on the record that
> '[t]here was not consideration of a cash balance plan prior to 1998'
> . . . and that 'Kaleida has produced all documents in its possession,
> custody, or control relating to the 1999 Amendment'. . . . Based on
> these representations, and given that the allegations of the
> Complaint focus on the July 1999 amendment that created the cash
> balance plan, rather than the 1998 hospitals merger, I find that the
> time limitations defendants incorporated in to their responses are
> appropriate and reasonable, even given the broad scope of
> discovery permitted by the federal Rules."

Decision and Order [58] at 8-9. Based upon defendants' representation that there "was not

consideration of a cash balance plan prior to 1998", and given the focus of the complaint's

allegations, I find that the time limitations proposed by defendants - January 1, 1998 through

December 31, 2000 - are appropriate and reasonable. I therefore modify Exhibit 1 to the Mercer

subpoena to include this time limitation into each request for documents.

      With respect to Item 3, I decline to make any ruling concerning the substance of

that specific request for information, except that it is subject to the other modifications I outline

here.

      Accordingly, defendants' motion to quash the Mercer subpoena is denied, and its

motion to modify Exhibit 1 to the subpoena is granted to the extent discussed above, and

otherwise denied.

### 2.    <ins>The Nixon Subpoena</ins>

      Defendants move to quash the Nixon subpoena in its entirety, based upon the

objections noted above with respect to the Mercer subpoena, and based upon attorney-client

privilege. Defendants' Memorandum of Law [33-5] at 17-18. Plaintiffs assert that they "are not

seeking any information that is protected by the attorney/client privilege and not subject to the

fiduciary exception".  Plaintiffs' Memorandum of Law [37] at 14.

"In the ERISA context . . . there is a 'fiduciary exception' to the attorney-client

privilege".  Leber v. Citigroup 401(k) Plan Investment Committee, 2015 WL 6437475, * 1

(S.D.N.Y. 2015).  "[A]n employer acts as an ERISA fiduciary only in plan management and

administration, not in the plan's design or amendment. . . . [A]n employer acting in the capacity

of ERISA fiduciary is disabled from asserting the attorney-client privilege against plan

beneficiaries on matters of plan administration".  In re Long Island Lighting Co., 129 F.3d 268,

271-72 (2d Cir. 1997).

Privilege remains intact, however, for communications concerning non-fiduciary

matters:

> "[W]here the attorney acts on behalf of both the employer and the
> beneficiaries - such as, in matters of plan administration and
> management - the beneficiaries are entitled to disclosure of
> communications between counsel and the employer. . . . The
> beneficiaries are not entitled, however, to disclosure of their
> communications on non-fiduciary matters even if the employer and
> counsel have also communicated about fiduciary matters".

Gill v. Bausch & Lomb Supplemental Retirement Income Plan I, 284 F.R.D. 84, 88 (W.D.N.Y.

2012).

Because there may be non-privileged communications covered by the subpoena's

document requests, defendants' motion to quash the Nixon subpoena is denied.  I modify the

Exhibit 1 to the Nixon subpoena to match Exhibit 1 to the Mercer subpoena, for the same reasons

outlined above.  Further, to the extent that any responsive communications or documents remain

subject to the attorney-client privilege, Nixon may place them on a privilege log that complies

with Local Rule 26(d).

**CONCLUSION**

For these reasons, the parties' motions are granted in part and denied in part as described above.  In summary, I instruct the parties as follows:

- Plaintiffs shall provide a privilege log that complies with the requirements of Local Rule 26(d) on or before December 20, 2024;

- Defendants shall provide to plaintiffs the documents responsive to the request discussed in section B.6. above, or disclose by Bates number the documents already produced that are responsive to this request, on or before December 20, 2024;

- Defendants shall serve unredacted copies of the redacted documents marked "Non-Responsive", subject to appropriate designation under the Confidentiality Order, on or before December 20, 2024;

- To the extent that any "actuarial valuation" exists and contains "assumptions the Plan's enrolled actuary made in calculating the Plan's estimated benefit liabilities", as limited by my September 25, 2023 Decision and Order [58], defendants shall serve any such "actuarial valuation", or state that no such document(s) exists, on or before December 20, 2024;

- To the extent that defendants have withheld any responsive documents created post-commencement that are not subject to the work-product privilege, they must produce them on or before December 20, 2024.  With respect to litigation hold letters, defendants shall submit these to the court for *in camera* by December 13, 2024 for me to determine whether they "constitute or contain legal advice and work product";

- Defendants shall answer Requests Nos. 1, 2, 3, 5, 6, 7, 8, 9, and 10, as modified, on or before December 20, 2024;

- Plaintiffs may re-serve the Mercer subpoena with Exhibit 1 modified to the extent discussed above; and

- Plaintiffs may re-serve the Nixon subpoena with Exhibit 1 modified to the extent discussed above, and, to the extent that any responsive communications or documents remain subject to the attorney-client privilege, Nixon may place them on a privilege log that complies with Local Rule 26(d).

The remaining issues raised by the parties' motions, but not identified in their February 12, 2024 letters [91, 92] are deemed resolved pursuant to my February 2, 2024 Text Order [70] and, therefore, denied as moot.

Dated: November 27, 2024

_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge